**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ALYSSA V. HOPE, *aka Michael A. Jones* | * |
| Plaintiff | * |
| v | *    Civil Action No. RDB-20-281 |
| E. RITCHIE, | * |
| Z. KIFER, | |
| | * |
| Defendants | |

\*\*\*

## MEMORANDUM OPINION

Self-represented Plaintiff Alyssa V. Hope, an inmate at North Branch Correctional Institution ("NBCI") alleges in this verified Complaint filed pursuant to 42 U.S.C. § 1983 that she was subjected to excessive use of force and unconstitutional conditions of confinement. (ECF No. 1). Defendants, Correctional Officers Earl Ritchie and Zachary Kifer, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, which is supported by verified exhibits. (ECF No. 11). Plaintiff opposes the motion. (ECF No. 20). No hearing is necessary for determination of the matters pending. *See* Local Rule 105.6 (D. Md. 2018). Defendants' Motion, construed as a Motion for Summary Judgment, will be granted. Plaintiff's opposing Motion (ECF No. 20) will be denied.

### BACKGROUND

Plaintiff alleges that she was subjected to mental and emotional torture, and denied "a right to showers and hygiene, while housed in a strip cell." (ECF No. 1 at 1). Plaintiff states that on January 21, 2020, she kneeled down at her open feed-up slot[1] to speak to Officer Kifer about

---

[1] The cell door security slot is commonly called the "feed-up slot" because it is also used to pass meal trays to the inmate. (ECF No.11-1 n. 2).

making a phone call, when Kifer sprayed half a can of pepper spray in her face "without just cause." (*Id.* at 4). Defendants assert that Plaintiff was attempting to grab Kifer's security keys through the security slot when the spray was used. (ECF No. 11-2 at 9).

Plaintiff claims Kifer and McKinney[2] slammed her hand in the feed-up slot in an apparent attempt to break her hand and did not respond when Plaintiff asked them why they were assaulting her. (*Id.*). Plaintiff asserts she forced the slot down at which time Officer Kifer deployed pepper spray into the cell. (*Id.*). Plaintiff acknowledges she threw a food tray through the feed-up slot at Officer Kifer to stop the "chemical assault." (*Id.* at 4).

Plaintiff alleges Officer Ritchie came to the cell and said "cuff up bitch and come out, or we are coming in." (*Id.*). Plaintiff was fearful and refused to leave. After she explained to a sergeant what had transpired, Plaintiff agreed to be handcuffed and was escorted to a strip cage where she was strip searched by two female officers because she is a transgender female inmate. (*Id.*). Plaintiff was taken to the medical unit where she was examined by a nurse, given a shower, and placed in a strip cell containing only a blanket, sheet, and mattress. She was denied a pillow, hygiene items, and other unspecified property. (*Id.* at 5).

A few hours later, Plaintiff was notified that she was being charged with two inmate rule violations based on the incident. Plaintiff noticed the form indicated that she refused "to sign for her inmate rule violations" and waived the right to call witnesses or present evidence. (*Id.*). Plaintiff asserts that she feared she would "not be allow [sic] to make a statement against those fine offer's [sic]." (*Id.*). Plaintiff states she was told that if she wanted to eat, she would have to go to the back of the cell, kneel down, and place her hands on the wall while the correctional officer opened the security slot and threw her food on the floor. (*Id.*). Plaintiff immediately

---

[2] Officer McKinney is not a defendant in this case.

declared a hunger strike fearing for her life and safety. (*Id*.at 5-6). Plaintiff states that showers were "off limits," and that she was threatened with placement on suicide-[watch] if she did not end her hunger strike. (*Id*. at 6).

Plaintiff asserts that she was denied the right to file Administrative Remedy Procedure requests (ARPs) while in the strip-cell and until she came off staff-alert status. (*Id*.; ECF 20 at 5). Plaintiff alleges that "due to this being a life-threatening issue [this] Court has [the] right to overlook the exhaustion of administrative remedy legal claim." (*Id*. at 6).

According to Plaintiff, Ritchie violated her rights by threatening bodily harm, and Kifer violated her rights by chemically assaulting her with a "whole can of pepper spray," and slamming her hand in the feed-up slot. (*Id*. at 6-7). She is suing them both in their individual and official capacities for compensatory and punitive damages. (*Id*. at 7).[3]

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,@ then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.

---

[3] Plaintiff's request for a temporary restraining order or preliminary injunctive relief was denied on February 14, 2020. (ECF No. 3).

R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat=l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  A[A] complete failure of proof concerning an essential element . . . necessarily renders all other  facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

Mindful that Plaintiff is proceeding as a self-represented litigant, this Court must liberally construe her pleadings. *See e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

As a threshold matter, Defendants raise the affirmative defense that Plaintiff has failed to exhaust her administrative remedies.  If Plaintiff's claim has not been properly exhausted, then it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, which provides in pertinent part "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or

diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). Exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining"[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). The court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

"[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1853 (2016). It may also be unavailable when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In Maryland, to exhaust the administrative remedy process process an inmate must first file an Administrative Remedy Procedure ("ARP") requests with the prison's warden. Department of Correction Directive ("DCD") 185-002 § V.B.1; *see also* DCD 185-003. If the warden denies the ARP or fails to respond to it within an established time frame, the prisoner may file an appeal to the Commissioner of Corrections. Next, if the Commissioner of Corrections denies the inmate's appeal, he may file a grievance with the Inmate Grievance Office. Md. Code Regs. ("COMAR") 12.02.28.18; Md. Code Ann., Corr. Servs. § 10-206(a); COMAR 12.07.01.05(B). Upon receipt, the IGO conducts a "preliminary review" of the submission and may dismiss the complaint upon determination that it is "wholly lacking in merit on its face." Corr. Servs. 10-207(a)-(b)(1); COMAR 12.07.01.06A-B.

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust

6

administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015). State statute of limitations applicable to the filing of § 1983 complaints are subject to equitable tolling during the period of time a prisoner is exhausting administrative remedies. *Battle v. Ledford*, 912 F.3d 708, 719–20 (4th Cir. 2019).

Plaintiff filed no grievances appealing any administrative decisions with the IGO based on the January 21, 2020 incident. (Declaration of Pamela White, Administrative Aide, Inmate Grievance Office, ECF No. 11-5). Of import, Plaintiff does not dispute that her claims are unexhausted. Rather, she asserts that while in the strip-cell and until she came off staff-alert status for her hunger strike, she was denied the opportunity to file an ARP. (*Id.*; ECF 20 at 5). Plaintiff, recognizing her claims are unexhausted, maintains that "due to this being a life-threatening issue [this] Court has [the] right to overlook the exhaustion of administrative remedy legal claim." (*Id.* at 6). This Court is unaware of any supporting legal authority for this contention and Plaintiff provides none. In any event, neither Plaintiff's allegations nor the record suggest she was in danger of "life threatening" harm.

Plaintiff does not state when she came off staff alert status or how long she remained on staff alert status. She does not assert that the time she was in the strip cage and staff alert status precluded her from filing an ARP within the requisite thirty-day filing period. Plaintiff's verified medical records demonstrate that she maintained her hunger strike from January 21-25, 2020,

(ECF 11-4 at 3, 5-15, 18), a staff alert barrier or "bubble" was placed in front of her cell door on January 23 and 24, 2020, and the staff alert barrier was removed by January 25, 2020. (*Id*. at 5, 7, 15). Plaintiff does not assert that she was unable to access the ARP process once she came off staff alert on or about January 25, 2020, four days after the incident. Plaintiff's allegations, viewed in the light most favorable to her fail to show the ARP procedure was a dead end; was incapable of use; or that prison administrators used the process to thwart her from accessing it, making it unavailable as contemplated in *Ross*. 136 S.Ct. at 1853, 1860.

The record evidence shows Plaintiff signed the Complaint in this case on January 22, 2020, just one day after the incident, it was sent to this Court in an envelope date stamped January 27, 2020, and it was docketed on February 3, 2020. (ECF No. 1 at 8; ECF 1-1). Given this time frame, it is clear that the Complaint was filed long before Plaintiff could have attempted to exhaust all required levels of review. [4]

Under these circumstances, even when the facts are viewed in the light most favorable to Plaintiff, there is no genuine dispute of material fact whether these claims are unexhausted. Defendants' Motion for Summary Judgment will be granted, and the complaint dismissed without prejudice.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, this Court will grant Defendants' Motion for Summary Judgment. A separate Order follows.

 1/29/2021                                      /s/                                   
Date                                            RICHARD D. BENNETT
                                                UNITED STATES DISTRICT JUDGE

---

[4] In regard to her claim concerning the notice of infraction, Plaintiff does not provide evidence that she appealed the decision of the hearing examiner in any disciplinary proceeding in the appropriate matter outlined above.